UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                                       }
JOHN K. ROBINSON,                            }
                                             }   Case No. 09-42543-JJR-13
                    Debtor.                  }

## MEMORANDUM OPINION

On March 10, 2010, the Trustee filed a motion to modify (Doc. 125 and herein, the "Trustee's Motion") the Debtor's previously confirmed chapter 13 plan (Doc. 110). According to the Trustee's Motion, the plan payments needed to be increased to pay claim 9 filed by American General Finance ("American"). Soon thereafter the Debtor filed an objection to the Trustee's Motion (Doc. 128) and an objection to American's claim 9 (Doc. 129 and together with Doc. 128, the "Objections").[1] The Debtor's grounds for the Objections were that American's claim was excessive because it included bankruptcy attorney fees and court costs that were not authorized by the contract attached to American's proof of claim.

At the hearing on the Trustee's Motion and the Objections, counsel for the Debtor adamantly argued that attached to American's proof of claim filed February 23, 2010 (the "February PoC") was only the first page of the Loan Agreement and Disclosure Statement (the "Loan Agreement") that evidenced the purchase-money automobile loan made by American to the Debtor, and that no provision on that page authorized American to collect attorney's fees or court costs.[2] At the insistence of Debtor's counsel, the Court focused its attention on the February PoC and its

---

[1] The Trustee's Motion and the Objections are core proceedings pursuant to 28 U.S.C. § 157(b)(2).

[2] Neither counsel for American nor the Debtor were present at the hearing.

attachment, and counsel was absolutely correct: Only the first page of the Loan Agreement was attached to the February PoC and that page said nothing about attorney's fees and court costs, much less American's rights to recover the same from the Debtor.[3]

After listening to the representations and arguments of Debtor's counsel, the Court overruled the Objections for the reasons stated on the record.[4] Following the hearing, and while preparing a written order on the Objections and the Trustee's Motion, the Court discovered that Debtor's counsel apparently had intentionally, or with reckless disregard for the truth, misled the Court. Notwithstanding what has now come to the attention of the Court, the Objections are still due to be overruled and the Trustee's Motion granted, but as discussed below, for entirely different reasons than those stated on the record. Once all the facts surrounding this matter are brought to light, the

---

[3]Although not material to this Opinion, a copy of the certificate of title confirming perfection of American General's security interest was also attached to the February PoC.

[4]At the end of the hearing, the Court announced it was overruling the Debtor's Objections and granting the Trustee's Motion because it was common knowledge that loan and security agreements such as the Loan Agreement (the first page of which was attached to the February PoC) contained provisions allowing the secured creditor to collect post-default attorney's fees and expenses, and that if the complete Loan Agreement had been available for review such a provision would almost certainly be found. The Court offered to continue the hearing on the Objections to allow Debtor's counsel to conduct discovery for the purpose of obtaining a complete copy of the Loan Agreement from American. Counsel rejected the offer and asked for a ruling based on the evidence then before the Court.

There is a split of authority between courts that summarily sustain objections to claims if they do not substantially conform with the requirements of Bankr. Rule 3001 and those courts, like this one, that require the objecting party to at least prove a prima facie case for sustaining the objection and disallowing the claim. While Bankr. Rule 3001 states what form, content and supporting documents are required for a creditor's proof of claim, it does not state what the consequences are for failure to comply with that Rule other than a deficient claim does not constitute prima facie evidence of the validity and amount of the claim. On the other hand, Section 502(b) of the Code does specify on what grounds a court may disallow a claim, and filing a imperfect proof of claim that does not satisfy Bankr. Rule 3001 is not one of them.

conduct of Debtor's counsel is unsettling.

The Debtor filed his petition for relief under chapter 13 on August 27, 2009. On October 28, 2009 American filed its original proof of claim (the "Original PoC") indicating it was the holder of a secured claim in the amount of $4,956.06. Attached to the Original PoC was a *complete* copy of the Loan Agreement.[5] On page seven of the Loan Agreement, under the heading "<u>DEFAULT COSTS</u>," the Debtor agreed that: "In the event of default, I agree to pay Lender's: (a) court costs; (b) if the original Amount Financed is over $300.00, reasonable attorney's fees . . . ."[6]

On February 1, 2010 the Debtor filed his amended chapter 13 plan, which was later confirmed. In his amended plan he proposed to pay American's secured claim in the amount of $4,956.06 – the exact amount shown in the Original PoC.[7] On the same day the amended plan was filed, American filed a Motion For Relief From Automatic Stay (Doc. 82 and herein, the "Motion For Relief") and paid the associated $150.00 filing fee to the Clerk of Court.

Before the final hearing on the Motion For Relief, the Court was informed that the matter had been settled and a consent order would be submitted by the parties for entry.[8] Such an order was

---

[5] Although not material to this Opinion, a copy of the certificate of title covering the Debtor's 2003 Nissan on which American was shown as first lien-holder was also attached to the Original PoC.

[6] The Fact Summary (Doc. 83) filed by American in support of its Motion For Relief (discussed *infra*), stated the car loan was in default for two monthly installments.

[7] The amended plan also proposed to pay child support arrears ($36,877.00), first and second home mortgages ($49,656.00), a furniture loan ($626.40), and the Debtor's attorney ($2,750.00), but proposed to pay nothing to unsecured creditors who, according to the Debtor's schedules, held claims totaling $36,572.00.

[8] On February 16, 2010 the Courtroom Deputy received the following message via email from the Trustee:

TOM CALLED. HE SAID WES IS W.D OBJ TO CONF ANF HIS MRS WITH

3

presented to the Court, and on February 23, 2010 the Court entered an "Order Conditionally Denying Motion for Relief From Automatic Stay" (Doc. 120 and herein, the "Consent Order"). The introductory paragraph of the Consent Order stated that "the parties having advised the Court prior to the hearing that an agreement has been reached which is encompassed in this Order, it is therefore ORDERED, ADJUDGED and DECREED as follows . . . ." The Consent Order continued, and in paragraph 3 stated that: "American General Finance is allowed to file an amended Proof of Claim to include attorney fees and costs."

Pursuant to the Consent Order, American filed an amended proof of claim, i.e. the February PoC, in which its secured claim was increased by $400.00 – from $4,956.06 shown in the Original PoC to $5,356.06. On the face of the February PoC, American stated that its claim included "$250.00 BK Attorney Fee + $150.00 Court Costs." In other words, the February PoC simply increased American's claim as Debtor's counsel had agreed pursuant to the settlement and as authorized by the Consent Order – none of which Debtor's counsel disclosed to the Court during the hearing on the Objections.

As mentioned above, the entire eight-page Loan Agreement was not attached to the February PoC; only a copy of its first page was attached. However, since the February PoC was an amendment, there was no requirement that anything be attached thereto that was previously attached to the Original PoC. Nonetheless, counsel for the Debtor based his entire argument in support of

---

> HARRISON IS SETTLED. I WILL W.D MY OBJ TO CONF FIRST THING IN MORN. IT MAY BE READY FOR SHORT LISTED.

Although no interpretation is probably needed, the import of this message was: Tom Semmes (debtor's counsel) called and told the Trustee an objection to confirmation was being withdrawn and the motion for relief from stay filed by Michael Harrrison (American's counsel) had settled, and the plan may be eligible for expedited confirmation.

4

the Objections on the February PoC and its limited attachment, but never once mentioned that the February PoC was an amendment and that attached to the Original PoC was the entire Loan Agreement containing language authorizing collection of attorney's fees and court costs. Moreover, and just as important, Debtor's counsel never informed the Court that he had previously agreed that the claim he now attacked could be increased to include attorney's fees and costs precisely as allowed in the Consent Order and as evidenced by the February PoC.

Thus, the Objections are due to be overruled and the Trustee's Motion granted, not only because American's claim, as amended, was sufficient, but because through his counsel, the Debtor expressly and unequivocally agreed to the inclusion of the very fees and expenses about which he now objects. The Court will enter an Order in conformity with this portion of the Opinion.

Unfortunately, simply overruling the Objections and granting the Trustee's Motion on grounds different from those originally stated on the record at the end of the hearing does not address the most important issue here. The Debtor was not the cause of the problem. It was his counsel's misrepresentations or reckless disregard for the truth that gave rise to the unfounded Objections to the Trustee's Motion. All attorneys in bankruptcy cases, whether they represent debtors, creditors or trustees, are expected to be advocates for their clients; however, their conduct at all times remains subject to cannons of ethics and rules of court,[9] including Rule 9011 of the Federal Rules of Bankruptcy Procedure. That Rule provides in pertinent part:

> (b) Representations to the Court. By presenting to the court

---

[9]"[Although an attorney] should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court." 7 James Wm. Moore et al., Moore's Federal Practice ¶ 60.33 at 513 (1971 ed.).

5

> (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the [attorney's] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances,* —
>
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>>
>> (3) *the allegations and other factual contentions have evidentiary support* or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on a lack of information or belief.

Fed. R. Bankr. P. 9011 (emphasis added).

The representations by Debtor's counsel to this Court had no evidentiary support, and were contrary to the "law of the case" established by the Consent Order which embodied the parties' settlement that had been negotiated by Debtor's counsel. The Court must conclude that Debtor's counsel either intentionally or through gross negligence failed to bring to the Court's attention that the February PoC was an amendment, and attached to the Original PoC was a complete copy of the Loan Agreement. Inasmuch as Debtor's counsel negotiated a settlement of Motion For Relief and must have been aware of the Original PoC – the amount of the claim shown in Debtor's plan matched to the penny the amount shown in the Original PoC – what else is the Court to conclude? Even if counsel had forgotten what had previously transpired in the case, a quick review of the file – necessary to draft the Objections and prepare for the hearing – would have revealed the terms of

6

Case 09-42543-JJR13    Doc 134    Filed 04/23/10    Entered 04/23/10 16:10:10    Desc
Main Document      Page 6 of 7

the settlement and Consent Order.[10] Thus, the implicit certification imposed on counsel by Rule 9011(b) was violated when the Objections were filed and misrepresentations were made by Debtor's counsel at the hearing.

Rule 9011 continues:

> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> (1) How Initiated.
> . . .
> (B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Accordingly, by separate Order the Debtor's attorney and his law firm shall be directed to show cause why they have not violated subdivision (b) of Rule 9011 of the Federal Rules of Bankruptcy Procedure as evidenced by the events and conduct described in this Opinion.

Dated: April 23, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[10] In light of the Objections being served just three weeks after entry of the Consent Order, without further explanation, it is difficult for the Court to accept this was a mere slip of memory or excusable oversight.